IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION


DARREN W. MILLER,                    )
                                     )
            Plaintiff,               )
                                     )
      v.                             )      Case No. 05-5156-CV-S-NKL
                                     )
JO ANNE BARNHART,                    )
Commissioner of Social Security,     )
                                     )
            Defendant.               )
                                     )


ORDER

Pending before the Court is Plaintiff Darren W. Miller's ("Miller") Motion for

Summary Judgment [Doc. # 13].  Miller seeks judicial review of the Commissioner's

denial of his requests for disability insurance benefits under Title II of the Social Security

Act, 42 U.S.C. §§ 401 *et seq*, and for supplemental security income benefits under Title

XVI of the Act, 42 U.S.C. §§ 1381 *et seq.*  The Administrative Law Judge ("ALJ") found

that Miller was not entitled to benefits, and such determination became the final decision

of the Commissioner when the Appeals Council denied Miller's request for review.

Miller has exhausted his administrative remedies, and jurisdiction is conferred on this

Court pursuant to 42 U.S.C. § 405(g).  Because the Court finds that the Administrative

Law Judge's decision is supported by substantial evidence[1] in the record as a whole, the Court affirms the ALJ's decision.

## I.    Background

### A.    Summary of Medical History

Miller saw Dr. Lennard a consulting neurologist in May 2002 for a Disability Determination Evaluation.  Dr. Lennard found that Miller walked with a limp but without an assistance devise, and had full range of motion in his upper extremities and almost full in his lower extremities, though testing of the left ankle was difficult due to pain.  (Tr. 215-16.)  Dr. Lennard found that Plaintiff would have difficulty with tasks that required prolonged walking and squatting, as well as stair climbing, but Plaintiff was not further limited in his physical functioning.  (Tr. 216.)

Miller had an MRI of his spine on August 9, 2002, for lower back pain and left leg pain.  The MRI found scoliosis of the lumbar spine, very minimal impingement on the left neural foramen at L4-L5, degenerative changes of the L5-S1 disc space and an associated diffuse bulge, without definite impingement.  (Tr. 248.)

On November 11, 2002, Miller saw Dr. Jarek who found mild to moderate scoliosis of lumbar spine, marked pes cavus bilaterally with tenderness of right instep, but no ankle varus or equine deformity.  Miller responded well to pain medication, and Jarek thought his symptoms to be static but noted that bracing or orthotics might be appropriate in the future if the pain worsened.  (Tr. 230-38.)

---

[1] Upon review of the record and the law, the Court finds the Defendant's position persuasive. Portions of the Defendant's brief are adopted without quotation designated.

Miller saw Jarek again on January 6, 2003, for a follow-up. Jarek noted obvious scoliotic curvature throughout thoracic and lumbar spine, neither shoulders nor pelvis level. Jarek noted both varus and equine deformity of the left ankle, both reversible with standing and weight bearing. Jarek noted that Plaintiff had an "over-the-counter" back brace which he had worn off and on for four years, but which really did not benefit him. (Tr. 227.) Jarek's assessment was long-standing scoliosis with increasing symptomatology, equine varus deformity with pes cavus. (Tr. 227-29.)

Miller saw Jarek again in August 2003. Jarek noted significant scoliosis and pes cavus. He noted that Miller was wearing a boot over his deformed foot which seemed to help. Jarek concluded that there was not much more he could do for Miller from a rheumatology standpoint, and recommended he follow up with his primary care physician for scoliosis. (Tr. 225-26.)

Miller saw Dr. Sreepada on April 29, 2003, to check for hereditary motor and sensory neuropathy. Dr. Sreepada noted scoliosis, chronic low pack pain, questionable L5-S1 radiculopathy on the left side with objective findings of high arch palate as well as high arch of his feet with clumsiness in both feet. In May 2005, Miller saw Dr. Sreepada again to check for Charcot-Marie-Tooth disease (CMT). The test was negative for CMT, and Dr. Sreepada found normal nerve conduction except for some very mild latency increase of the left peroneal with decreased compound motor action potential. Dr. Sreepada also found marked asymmetry from the left and right compound motor nerve act on potential. (Tr. 240-46.)

3

Miller saw Dr. Paul Olive on April 17, 2003, on referral from Dr. Jarek. Dr. Olive noted that Miller was in no acute distress, moved about the room comfortably, and had normal gait, station, and posture. He noted very mild scoliosis deformity, limited range of motion in his spine with diffuse tenderness throughout lower back, but full range of motion in the hips, legs, and ankles. He diagnoses chronic lower back pain but recommended physical therapy over surgery. When Miller saw Dr. Olive again in August, Miller asked for a prescription for an ankle brace, which Dr. Olive gave him. Olive diagnoses some very minor swelling of the right foot, likely due to ganglion cyst. In December 2003, Dr. Olive also prescribed a cane for Miller, though it is not clear from the record whether Dr. Olive actually saw Miller when he prescribed the cane. (Tr. 304-05, 343.)

From November 2002 through December 2003, Miller had monthly visits with Dr. Damon Thomas who oversaw his referrals to different specialists to treat his scoliosis. Dr. Thomas noted left ankle sprain in June 2003, for which Miller had obtained an ankle brace from Dr. Olive at Miller's request, but X-rays were negative. In August, Dr. Thomas told Miller he no longer needed the brace. In September, Miller has lower back pain and wore a lower back support brace. In November 2003, Dr. Thomas noted that Miller reported lower back pain but had not wincing or guarding of this lower back. He told Miller that he did not feel comfortable filling out a Medical Source Statement and that he would need a disability exam by another physician. In December, Dr. Thomas

noted that Miller was using the cane prescribed to him by Dr. Olive, but that it was not clear that Miller needed the cane. (Tr. 273-302, 315.)

Miller obtained a Medical Source Statements from Dr. Malcolm Oliver on February 4, 2004. Dr. Oliver opined that Miller could lift and carry frequently 5 lbs, lift and carry occasionally 5 lbs, stand and/or walk continuously without a break for 30 minutes, stand and/or walk throughout an 8-hour work day for 3 hours, sit continuously without break for 45 minutes, sit throughout an 8-hour work day for 3 hours, and would need to lay down to alleviate pain or fatigue 4 to 5 times per day for 10 to 15 minutes. (Tr. 379.)

Miller was evaluated by Dr. McQueary on January 22, 2004. Dr. McQueary noted mild restriction of motion of the spine, no deformity, pain on percussion of the lumbar spine, normal muscle strength and tone. He also noted that an MRI performed on December 29, 2003, showed disc desiccation with no narrowing and no spondylolysis at L5-S1. Dr. McQueary diagnosed L5 spondylolysis without any spondylolisthesis, no clinical evidence of instability, and some L5-S1 degenerative disc disease which was the primary source of Miller's pain. He recommended home back exercises and use of a stationary bike. There is no mention of scoliosis on Dr. McQueary's notes. In April 2004, McQueary provided a Medical Source Statement similar to Dr. Oliver's save that he thought Miller could lift and carry slightly more and sit for as much as four hours in an eight-hour day. (Tr. 396-402.)

B. **Hearing**

5

### 1.    Testimony of Medical Expert

At a hearing, Dr. Phillip McCown, a medical expert, testified by phone based on his review of the medical evidence in the record.  Dr. McCown opined that Miller's scoliosis was too mild to render him disabled.  Miller might not be able to perform heavy labor, but he would have no limitation on performing light or sedentary work.  Dr. McCown could find no basis in the record for Miller to use a back brace, an ankle brace or a cane.  He noted that the two MRIs of Miller was vastly inconsistent in that the first didn't show any spondylolysis and the second didn't show any scoliosis.  He questioned whether the MRIs were even of the same patient.  He concluded that Miller was not disabled.

### 2.    Testimony of Claimant Miller

Miller testified as to his intermittent job history and the pain in his legs and back.  He asserted that he was not an alcoholic and that the occasional indications of alcoholism in the record were mistaken.  He stated that he quit drinking alcohol when he began taking prescription pain medication in 2002 for fear of drug interaction.

### 3.    Testimony of Vocational Expert

Vocational Expert George Horne testified that Miller had performed past work that was semi-skilled and unskilled, including low molting machine operator, nurse's aid, poultry hanger, poultry dressing worker, garment ripper, fast foods worker, automobile mechanic helper, and commercial cleaner.  Horne testified that Miller had no transferable skills.  He testified that a person of Miller's abilities and restrictions as assessed in the

6

two medical source statements could not perform any of his past relevant work or any other work.

## II.     The ALJ's Decision

The ALJ found Miller to have the following severe impairments: degenerative disc disease of the lumbar spine with evidence of mild scoliosis and degenerative changes at the L5-S1 level, an associated diffuse bulge without definite impingement and grade 1 (minimal) anterior spondylolisthesis at the L5-S1 level; and history of right and left ankle pain with very mild swelling on the lateral aspect of the right foot, possibly due to an early ganglion cyst, and a fairly mark ligament laxity, particularly to inversion present in both feet, on physical examination.

The ALJ found Miller's testimony, with respect to the severity of his overall condition, to be not credible, and not supported by the totality of the evidence.  He also discounted the medical source statements of Doctors Oliver and McQueary as being unsupported by the record, and instead found the evaluation of the non-treating Medical Expert, Dr. McCown, to be reasonable.

The ALJ concluded that Miller has the residual functional capacity to perform the exertional requirements of sedentary, entry level work activity but is unable to perform his past relevant light to heavy work.  Therefore, the ALJ denied Miller's request for benefits.

## III.     Standard of Review

When reviewing the Commissioner's decision concerning disability benefits, courts may not decide facts anew, reweigh the evidence or substitute their judgment for that of the Commissioner. *See Brockman v. Sullivan*, 987 F.2d 1344, 1346 (8th Cir. 1993) (citing *Jelinek v. Bowen*, 870 F.2d 457, 458 (8th Cir. 1989)). Rather, the standard of appellate review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *See Sampson v. Apfel*, 165 F.3d 616, 618 (1999); *see also Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996); *Carlson v. Chater*, 74 F.3d 869, 871 (8th Cir. 1996); *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995). Substantial evidence is that evidence which reasonable minds would accept as adequate to support the Commissioner's conclusion. *See Williams v. Sullivan*, 960 F.2d 86, 89 (8th Cir. 1992). An administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *See Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996); *see also Shannon*, 54 F.3d at 486; *Onstead v. Sullivan*, 962 F.2d 803, 804 (8th Cir. 1992).

## IV. Discussion

To establish entitlement to benefits, Plaintiff must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

### A. The ALJ Properly Weighed the Opinions of Plaintiff's Treating Physicians, Drs. Oliver and McQueary.

8

Plaintiff asserts that the ALJ failed to give proper weight to his treating physicians, Doctors Oliver and McQueary. In the instant case, the ALJ noted that Doctors Oliver and McQueary's opinions regarding disability were not supported by any physical or neurological findings on examination. (Tr. 22.) On January 6, 2003, Plaintiff was noted to have an obvious scoliotic curvature in his spine and some mild tenderness, but his upper extremity joints had normal alignment and range of motion. (Tr. 22, 228.) His hips and knees were unremarkable, his strength appeared to be full throughout his lower extremities, and he was able to walk on his heels and toes. (Tr. 228.) Dr. Jarek assessed probable long-standing scoliosis, with increasing symptomatology, and equinus varus deformity with pes cavus, which he also believed was of long-standing duration. (Tr. 228.) If an individual has worked with an impairment, absent any significant deterioration, he cannot claim it as disabling at present. *See Orrick v. Sullivan*, 966 F.2d 368, 370 (8th Cir. 1992).

As for Plaintiff's alleged need for a cane and back and ankle braces, Dr. McCown reviewed the medical record and did not believe there was a medical necessity for the cane or braces. Dr. McCown's opinion is supported by Plaintiff's treating physician, Dr. Thomas, who noted in December 2003, that Plaintiff was using a cane, but it was not clear that he needed one. (Tr. 23, 315.) Moreover, Dr. Jarek, another one of Plaintiff's treating physicians, stated in January 2003, that Plaintiff had an "over-the-counter" back brace which he had worn off and on for four years, but which really did not benefit him. (Tr. 23, 227.) In April 2003, Dr. Olive reported that he prescribed an ankle brace and a

9

warm-and-form brace for Plaintiff to wear "at his request."  (Tr. 23, 305.)  A review of the medical evidence from Plaintiff's treating physicians supports Dr. McCown's conclusions that the assistive devices were not medically necessary for Plaintiff's condition.  (Tr. 227, 305, 315, 458.)

Plaintiff asserts because Dr. Oliver treated him from January 2004 to September 2004 and Dr. McQueary also treated him, their opinions should be given controlling weight.  Plaintiff's Brief, p. 7.  However, the record reveals that Dr. Oliver saw Plaintiff twice before rendering his opinion regarding Plaintiff's limitations on February 4, 2004. (Tr. 379-80, 386-92, 425-37.)  Dr. McQueary saw Plaintiff on one occasion, in January 2004, before rendering his opinion regarding Plaintiff's limitations.  (Tr. 396-97, 403-04.) Moreover, the opinions of these doctors are inconsistent with evidence from Plaintiff's other treating and examining physicians, which show that Plaintiff's neurological examinations were generally normal and that there was no medical necessity for Plaintiff to use a cane or ankle and back braces.  (Tr. 22, 216, 227-28, 232, 305, 315.)  It is the ALJ's function to resolve conflicts among the various treating and examining physicians. *See Meyer v. Callahan*, 980 F. Supp. 1069, 1076 (W.D. Mo. 1997) (*citing Bentley v. Shalala*, 52 F.3d 784, 785 (8th Cir. 1995)); *see also Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004) (the ALJ is warranted in discrediting a treating physician's opinion that is inconsistent with, or contradicted by, other evidence in the record). The ALJ considered the evidence in the record as a whole and properly found that the opinions of Doctors

Oliver and McQueary were not entitled to controlling or substantial weight. There is substantial evidence to support that conclusion.

**B.    The ALJ Properly Assessed Plaintiff's Credibility**

The ALJ must consider evidence in the record as a whole to determine the credibility of a claimant's subjective complaints. The ALJ's decision was consistent with the standard for evaluating pain and other subjective complaints as set forth in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984), the regulations at 20 C.F.R. §§ 404.1529, 416.929, and Social Security Ruling (SSR) 96-7p. In *Polaski,* the Eighth Circuit set forth factors the Commissioner must consider in evaluating subjective complaints. An ALJ must consider, in addition to objective medical evidence and Plaintiff's work record, any evidence relating to Plaintiff's daily activities; duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. *Id.* at 1322.

Plaintiff asserts that the ALJ only considered his work history and activities of daily living in determining his credibility. However, in his decision, the ALJ considered the entire record of evidence, including Plaintiff's testimony, his medical care, objective and opinion evidence, Plaintiff's work history, activities of daily living, side effects of medication, motivation to work, functional restrictions, and inconsistencies between his claims and the record as a whole. (Tr. 18-24.)

The ALJ properly considered that Plaintiff's work history was inconsistent and showed fluctuating levels of income. (Tr. 19.) He also noted that Plaintiff was out of the

work force at times for reasons other than disability, which demonstrated a poor motivation to work on his part. (Tr. 19, 61.) *See Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996) (plaintiff's prior work history characterized by fairly low earnings and significant breaks in employment casts doubt on his credibility). The ALJ also noted that Plaintiff's only medication side-effect was drowsiness; but Plaintiff took that medication at night. (Tr. 19, 498.)

The ALJ also considered Plaintiff's activities of daily living. (Tr. 19-20.) Plaintiff reported that he went with his father-in–law twice a week to buy parts for his father-in-law's small engine repair shop. Once a week he walked one-half block to visit a friend for about two hours and he washed dishes and read books and magazines. (Tr. 19-20, 135- 36, 481.) Plaintiff told Dr. Lennard in May 2002 that his typical day consists of helping his father in his machine shop and working on lawnmowers. (Tr. 215.) The ALJ also noted that Plaintiff told his treating physician, Dr. Jarek, that he enjoyed fishing and did not do anything more strenuous "by choice." (Tr. 20, 230.) Activities which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility. *See Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001).

The ALJ noted that the medical evidence did not support Plaintiff's allegations of disabling pain. (Tr. 20-21.) Plaintiff's scoliosis had generally been found to be mild to moderate. (Tr. 20, 232, 235, 305, 457.) Plaintiff's curvature of his spine and mechanical low back pain could cause some discomfort in his back and preclude him from manual labor type work. (Tr. 20-21, 457.) However, this should not preclude him from sedentary

12

and light work activity. (Tr. 21, 457, 462-63.) This finding is supported by the assessment of Dr. Lennard and Plaintiff's generally unremarkable neurological examinations. (Tr. 21, 216, 228, 240, 282, 305.) X-rays of Plaintiff's ankles also revealed no significant orthopedic impairment. (Tr. 21, 274, 458.) Plaintiff testified that he needed a cane to ambulate. (Tr. 19, 503.) However, the medical findings in the record did not demonstrate that Plaintiff needed a cane. (Tr. 22-23, 315, 458.) The ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole. *See Gray v. Apfel*, 192 F.3d 799, 803 (8th Cir. 1999); *see also Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (subjective complaints of pain may be discounted if there are inconsistencies in the evidence as a whole).

Because the ALJ articulated the inconsistencies on which he relied in discrediting Plaintiff's testimony regarding his subjective complaints and because his credibility finding is supported by substantial evidence on the record as a whole, the ALJ's credibility finding should be affirmed. *See Pena*, 76 F.3d at 908.

C. **The ALJ Properly Formulated His Residual Functional Capacity Finding.**

Plaintiff alleges that the ALJ's residual functional capacity finding was contradictory to Plaintiff's subjective complaints and the opinions of his treating physicians.

The ALJ found that as a result of Plaintiff's credible physical impairments, he was limited to sedentary work activity and, due to his eleventh grade education, he was limited to entry level work requiring only simple, repetitive, and routine job tasks. (Tr.

13

24.)  His finding is supported by objective medical and other evidence of record.  (Tr.

18-24, 216, 228, 240, 305, 315, 457, 462-63.)  Substantial evidence supports the ALJ's

residual functional capacity finding.

**V.      Conclusion**

Accordingly, it is hereby

ORDERED that Miller's Motion for Summary Judgment [Doc. # 13] is DENIED.

The decision of the ALJ is AFFIRMED.


s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  August 30, 2006
Kansas City, Missouri